UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 20-CR-47 (TJK) |
| | : | |
| ELTON WIGGINS, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing.

**I.     Factual Summary**

On November 5, 2021, defendant Elton Lowell Wiggins pled guilty to Count Two of the Indictment, charging him with Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The defendant accepted a factual proffer, *see* ECF No. 21, in support of his guilty plea, which included the following facts:

1.     On February 18, 2020, at approximately 11:02 a.m., Elton Lowell Wiggins, later identified as the defendant, entered the TD Bank located at 1489 P Street, N.W., Washington, D.C., holding a dark-colored scarf across his face. The defendant is captured on surveillance video walking up to one of the tellers at the counter ("Victim 1"). The defendant asked for help with his account, but the teller directed the defendant to sit down in the lobby as the teller was assisting a different customer ("Victim 2").

1

2. The defendant sat down in a chair located against the window in the lobby. Victim 1 responded to where the defendant was seated, and sat down next to him. At that point, the defendant handed Victim 1 a note that read "Put all the 100 50 20 10 take the die pack out I want to see you do it if someone sounds the alarm Im shooting you first." Victim 1 stood up, and walked with the defendant to the TD Bank teller counter. Upon approaching the counter, the defendant walked up behind Victim 2 standing at the counter, displayed a black in color semi-automatic handgun, pointed it at Victim 2, cursed at Victim 2, and told Victim 2 to give him all of the money in the bag. Victim 2 provided $40,000 in U.S. currency to the defendant, who placed the money into a dark colored tote bag.

3. The defendant then turned and pointed the handgun at the Victim 1 and another teller behind the counter ("Victim 3"), and demanded money from their respective cash registers. Victim 1 gave the defendant approximately $800 in U.S. currency to include GPS tracker money and Victim 3 gave the defendant approximately $2,190 in U.S. currency that also included GPS tracker money. The defendant then exited the bank at approximately 11:07 AM.

4. That same afternoon, the defendant was tracked and ultimately apprehended in an apartment located on Kenilworth Terrace in Northeast, Washington, D.C. At the time the defendant was apprehended, law enforcement recovered a black hat, a black bag containing approximately $42,230 in U.S. currency, two pairs of eye glasses, the two GPS trackers from TD Bank, and a black Glock 22 .40 Cal semi-automatic handgun, with ammunition in a ten-round magazine. The items recovered from the apartment did not belong to any of the occupants of the apartment. The black hat, glasses and bag matched the items that the defendant was observed wearing and/or carrying in the TD Bank surveillance footage.

5.  On February 20, 2020, the defendant was read and waived his *Miranda* rights. The defendant participated in a custodial interview and admitted to his involvement in the events described above.

As part of the plea in this case (Case No. 20-cr-47 (TJK) in the District Court for the District of Columbia), and pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Government and the Defendant agreed that a sentence of seven (7) years of incarceration, followed by five (5) years of supervised release, is the appropriate sentence for the offense to which the defendant pled guilty. This Agreement with respect to the appropriate sentence affects only the term of incarceration and supervised release.

In conjunction with the guilty plea to the above offense in this case, the defendant – as part of the global plea agreement with the government in this case – also pled guilty in the Superior Court for the District of Columbia, in Case No. 2020 CF1 004661, to Accessory After the Fact to Second Degree Murder While Armed, in violation of 22 D.C. Code §§ 1806, 2103, and 4502. In consideration of this global plea agreement, the parties have agreed not to seek a sentence outside the range of five (5) to eight (8) years of imprisonment in Case No. 2020 CF1 004661[1]. The defendant further agrees that the sentence imposed in Case No. 2020 CF1 004661 is to be served consecutively to the sentence imposed in Case No. 20-cr-47 (TJK). As such, the parties request the Court to accept the sentencing recommendation in the global plea agreement made pursuant to Rule 11(c)(1)(C).

---

[1] See Government's Sentencing Supplement filed under seal on February 11, 2022.

## II. Defendant's Criminal History

| Arrest Date | Charge/ Court | Disposition Date and Sentence | Guidelines | Points |
|---|---|---|---|---|
| 7/7/2016 | Receiving Stolen Property (RSP); Unauthorized Use of a Motor Vehicle (UUV), Offenses Committed During Release; Destruction of Property $1,000 or more (DP); Receiving Stolen Property $1,000 or more (RSP)<br><br>2016-CF3-010656<br>D.C. Superior Court | 11/23/2016: 90 days' incarceration (RSP); 22 months' incarceration (UUV); 22 months' incarceration (DP); 22 months' incarceration (RSP)<br><br>A warrant for a Violation of Probation was issued on 1/14/2020 | 4A1.1(a) | 3 |
| 8/10/2000 | Armed Robbery; Kidnapping<br><br>G216885<br>Lancaster County, SC | 8/20/2007: 15 years' incarceration<br><br>6/30/2015: Supervision closed satisfactorily | 4A1.1(a) | 3 |
| 2/23/1989 | Robbery with Handgun in Commission of Violent Crime<br><br>51132C<br>Montgomery County, MD | 11/15/1989: 10 years' incarceration<br><br>12/13/1995: Probation Revoked: 13 years, 6 months, and 2 days' confinement | 4A1.2(e)(1) & 4A1.1(a), App. Note 1 (more than 15 years old) | 0 |
| 1/22/1988 | Armed Robbery; Robbery; Robbery<br><br>1998-FEL-000663<br>D.C. Superior Court | 7/21/1988: 10 years – 30 years' incarceration (Armed Robbery); 3 years – 9 years' incarceration for each count of Robbery<br><br>8/12/1995: Parole terminated unsatisfactorily | 4A1.2(e)(1) & 4A1.1(a), App. Note 1 | 0 |
| 3/23/1984 | Robbery<br><br>33916C<br>Montgomery County, MD | 5/21/1985: 5 years' incarceration, 18 months' suspended; 5 years of supervised probation | 4A1.2(e)(1) & 4A1.1(a), App. Note 1 | 0 |

|  |  | 10/12/1989: Revocation of Probation: 3 years and 6 months' incarceration |  |  |
|---|---|---|---|---|
| 3/19/1984 | Second Degree Theft (T2); Simple Assault (SA)<br><br>1984-FEL-001951 D.C. Superior Court | 9/11/1985: 60 days' incarceration (T2); 60 days' incarceration (SA) | 4A1.2(e)(2) & 4A1.1(b), App. Note 2 | 0 |
|  | See additional information located on pages 5-7 in the pretrial services report* |  |  |  |

The defendant was on active supervision in Case No. 2016-CF3-010656 at the time he committed the instant offense, and therefore is subject to an additional two points pursuant to U.S.S.G. § 4A1.1(d). Moreover, at the time of this sentencing, the defendant had pled guilty (as part of this global agreement) to Accessory After the Fact to Second Degree Murder While Armed, in violation of 22 D.C. Code §§ 1806, 2103, and 4502 in the Superior Court for the District of Columbia in Case No. 2020 CF1 004661, and therefore is subject to one additional criminal history point. Accordingly, the defendant is estimated to have nine criminal history points and his Criminal History Category is estimated to be IV (the "Estimated Criminal History Category").

Pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is the minimum term of imprisonment required by the statute — in this case, seven years. The maximum sentence is up to life imprisonment.

### III.    Victim Impact Statement

A victim of this offense wished to provide a written statement to be considered by the Court. The statement reads as follows:

"Dear people of the court,

5

I just wanted to take a minute to explain the effects of Mr. Wiggins actions on February 18, 2020. The day started like any ordinary work day but quickly changed for the worst along with the next year of my life. First it affected my work, I was very hesitant to step back in a bank, and in my line of work that just couldn't happen. I would have to be accompanied by co workers or I started doing a lot of drive through banking. Secondly it affected my sleep, for a long while I was waking up a few times a night with the flashback of him pointing the gun at me and saying "no one try anything or I will shoot everyone in the face". Third I became very jumpy alone in public, if someone got to close I would get sort of a panic attack feeling which was affecting my work at my second job where I was employed as a security officer. I could go on and on but this is a good summary of how Mr. Wiggins has emotionally scared me and I hope you take this into account while setting his sentence for the pointless actions he took that day. Thanks you for listening.

## IV.   Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). United States v. Rita, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

The offense of Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), carries with it a maximum sentence of life imprisonment, and a minimum term of imprisonment required by the statute of seven years. Pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is the minimum term of imprisonment required by the statute — in

6

this case, seven years.

The defendant, a fifty-five-year-old man, has a significant criminal history that dates from 1985. Several of his prior convictions, as detailed above, were not scored due to the length of time that has passed since their disposition, and his release. This offense was also of a serious, and dangerous nature that necessitates a term of imprisonment as envisioned by the statute itself. As expressed by one of the victims above, the defendant's actions had a significant impact on the emotional state of his victims, as well as affected the business of the bank and the ATM companies.

Luckily, no individuals were physically harmed during this offense, and currency taken from the victims was recovered upon the defendant's arrest. Also of note, the defendant accepted responsibility at an early posture in this case and pled guilty in both of his pending cases prior to trial.

While the defendant's criminal history is serious and aggravating, there are aspects as to the defendant's history and characteristics that present additional mitigation. This includes the defendant's personal circumstances as detailed in his presentence interview which details prior instances where he himself had been victimized, particularly as a child. Of note, the defendant reported significant prior substance abuse, and mental health diagnoses, for which he has expressed a desire to seek ongoing treatment. The government also makes the Court aware of the additional information located in its supplemental filing, made under seal.

As such, the government recommends the Court accept the parties' sentencing recommendation of seven years' imprisonment to be followed by five years of supervised release.

### V.  Conclusion

For the foregoing reasons, the government recommends that the Court accept the parties' sentencing recommendation pursuant to Rule 11(c)(1)(C), and sentence the defendant to a sentence of seven years of incarceration, to be followed by a term of five years of supervised release. The government submits that a sentence of seven years of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of seven years of imprisonment serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY


By:   /s/ *Prava Palacharla*
Prava Palacharla
Assistant United States Attorney
United States Attorney's Office for D.C.
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
Email: Pravallika.palacharla@usdoj.gov
Phone: (202) 252-7829