UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 20-47 (TJK) |
| ELTON WIGGINS | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Elton Wiggins, through counsel, respectfully submits this Memorandum in aid of sentencing. On November 5, 2021, Mr. Wiggins pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement. He will appear before the Court for sentencing. Based on the nature and circumstances of the offense, Mr. Wiggins's background, his acceptance of responsibility, and the relevant sentencing factors pursuant to 18 U.S.C. § 3553(a), Mr. Wiggins submits that a sentence of 84 months incarceration, followed by five years of supervised release, pursuant to the plea agreement, is appropriate.

**Background**

On February 21, 2020, Mr. Wiggins was charged by criminal complaint with Bank Robbery, in violation of 18 U.S.C. § 2113(a). The next day, a two-count indictment was filed charging him with Bank Robbery, in violation of 18 U.S.C. § 2113(a) (Count 1) and Using, Carrying, and Possessing a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count 2). ECF No. 2. On November 5, 2021, Mr. Wiggins pled guilty to Count 2 of the Indictment and in exchange for his plea, the government agreed to dismiss Count 1.

1

**<u>Sentencing Law</u>**

Sixteen years ago, the Supreme Court held that "the Federal Sentencing Reform Act of 1984…ma[de] the Guidelines effectively *advisory*." *United States v. Booker*, 543 U.S. 220, 245 (2005). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the Supreme Court in *Booker* held that courts must consider all the purposes of sentencing set forth in 18 U.S.C. § 3553(a). In imposing a sentence that is not greater than necessary to comply with the purposes of sentencing, 18 U.S.C. § 3553(a) provides that the Court must consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and
        (D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner

    (3) the kinds of sentences available;

    (4) the kinds of sentence and the sentencing range established for—

        (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; …

    (5) any pertinent policy statement— …

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

18 U.S.C. § 3582(a) (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." *Id.* § 3553(a) (emphasis added).

## Argument

For the following reasons, a sentence of time 84 months incarceration followed by a term of five years supervised release is the only sentence not greater than necessary, yet sufficient, for the purposes of sentencing.

**I.     The Nature and Circumstances of the Offense Support the Need for a Sentence Consistent with the Plea Agreement of 84 months.**

Mr. Wiggins was arrested for offense conduct that took place two years ago on February 18, 2020. The incident lasted approximately five minutes. As set forth in the Presentence Investigation Report ("PSR"), Elton Wiggins entered a TD Bank, located in Northwest, D.C.,

3

handed a bank employee a note, demanding money. The bank employee stood up and walked with Mr. Wiggins to the counter. When he approached the counter, Mr. Wiggins displayed a black handgun, pointed it at the customer in front of him and demanded money from the customer. The customer placed $40,000 into a dark colored tote bag. Mr. Wiggins then turned and pointed the handgun to the bank employee and a teller and demanded money from their respective cash registers. Both provided him with money, including a GPS money tracker. Mr. Wiggins was tracked to an apartment in Northeast, Washington, D.C. and apprehended. A black bag containing $42,230 in U.S. Currency, the GPS trackers from TD Bank and a handgun were recovered. The clothes and items Mr. Wiggins was observed wearing, matched the TD Bank surveillance footage.

Mr. Wiggins takes full responsibility for his conduct. As the government noted in its sentencing memorandum, Mr. Wiggins "accepted responsibility at an early posture in this case." Gov't Memo., ECF No. 30, p. 7. In addition, he pled guilty, as part of the global agreement, to Accessory After the Fact to Second Degree Murder While Armed, Superior Court for the District of Columbia in Case No. 2020 CF1 004661. His acceptance of responsibility has allowed the government to conserve resources instead of spending them to bring both cases to trial. Mr. Wiggins continues to accept full responsibility for his conduct and has been remorseful.

## II. Mr. Wiggins's History and Characteristics and His Acceptance of Responsibility Warrant a Sentence of 84 months Incarceration.

Mr. Wiggins is 55 years old. He lost his mother at the tender age of two years old, a loss that is still difficult for him to deal with more than 50 years later. While he described having a "pretty good upbringing," his childhood tells a different story. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

4

███████████████████████████████████████████████

████████████████████. After he turned 14 years old, he lived with his father, who had trouble with alcohol.

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███▌ █████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████▌ █████████████

████████████████████████████████████████████

███████████████▌ ████████████████████████████

██████████▌ ████████████████████████████████

███████████████████████████████████████████

███▌ ████████████████████████████████████████

―――――――――――――――――――
▌████████████████████████████████████████████
▌████████████   ████████████████████████████████
▌███████████████████████████████████████████████
▌███████████████████████████████████████████████
▌███████████████████████████████   █████████████
▌███████████████████████████████████████████████
▌██

██████████████████████████████████████████   Furthermore, it led him to start consuming drugs at a young age. (PSR, ¶ 79). Drug addiction and mental health as well as physical challenges continue to plague him through adulthood, as reported in the PSR.

Mr. Wiggins's personal history and criminal history reflect mental health issues that have not been fully addressed, which may affect his adjustment during incarceration.

> [P]ersons with serious mental illnesses often lack the skills and abilities to cope successfully within prison. Strict conformance with prison rules can be very difficult for an individual with cognitive and behavioral limitations, and studies confirm that prisoners with serious mental illnesses are more likely than non-disordered prisoners to accrue disciplinary violations.

E. Lea Johnston, *Criminal Law: Vulnerability And Just Desert: A Theory of Sentencing and Mental Illness*, 103 J. Crim. L. & Criminology 147, 151 (2013). Furthermore, a 2005 study "found that 42.8% of male inmates with prior treatment for schizophrenia or bipolar disorder reported being physically assaulted by another inmate or a prison guard over a six-month period, compared to 32.4% of offenders without a mental disorder." *Id.* at 163 (citing Cynthia L. Blitz et al., *Physical Victimization in Prison: The Role of Mental Illness*, 31 Int'l J.L. & Psychiatry 385, 389 (2008)). Notably, "some individuals manifest their illnesses through obstreperous behavior, hostility, aggression, and violence." *Id.* at 171.

Mr. Wiggins explained during the PSR interview that he believes drug and mental health treatment will beneficial. For these reasons, he asks that the court impose a sentence of 84 months, pursuant to the plea agreement.

**III.    The Remaining Sentencing Factors Support the Requested Sentence in this Case.**

18 U.S.C. § 3553(a)(2)(A) provides that the Court must assess "the need for the sentence imposed— . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A lengthy term of incarceration is not required in order

for a sentence to reflect the seriousness of the offense. Even a sentence of probation "rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *United States v. Bennett*, No. 8:07CR235, 2008 U.S. Dist. LEXIS 45302, at *12 (D. Neb. May 30, 2008) (citing *Gall*, 552 U.S. at 99).

To determine a just punishment for Mr. Wiggins, the Court must consider how he will serve his time. Since the beginning of the COVID-19 pandemic, inmates have served time under harsher conditions – movement is limited, visits were suspended, and clients have been detained in their cells for a large majority of the day. While the Bureau of Prisons has gone through several phases to modify restrictions on inmates, social visits are limited to maintain safety, and "[i]nmate movement in small numbers is authorized for…showers three times each week."[6] Thousands of BOP inmates have tested positive for COVID-19 and the latest BOP numbers show that 274 inmates have died from COVID-19.[7] With the rise of COVID-19 variants, the risks of contracting the virus and death remain a serious concern for inmates, even for those who have been vaccinated because of breakthrough infections.[8] As a result, Mr. Wiggins will serve a 84 month sentence under harsh conditions. In addition, he will be sentenced in the Superior

---

[6] *See* Fed. Bureau of Prisons, *BOP Modified Operations* (Updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed September 29, 2021).

[7] *See* Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last accessed January 3, 2022).

[8] *See* Casey Tolan, Compassionate release became a life-or-death lottery for thousands of federal inmates during the pandemic, Cnn.com, Updated 7:05 am, Sept. 30, 2021, https://www.cnn.com/2021/09/30/us/covid-prison-inmates-compassionate-release-invs/index.html ("In at least one recent case, an inmate died after contracting a breakthrough coronavirus case despite being vaccinated. Rasheem Hicks, 42, who was serving a six and a half-year sentence for cocaine and firearm possession, died late last month about two weeks after testing positive for Covid-19.")

Court case and face additional time.

Under 18 U.S.C. §§ 3553(a)(2)(B) and (a)(2)(C), this Court must also consider "the need for the sentence imposed—. . . to afford adequate deterrence to criminal conduct...[and] to protect the public from further crimes of the defendant." Mr. Wiggins is facing a lengthy sentence in this federal case and the Superior Court case. He will be between 67 and 70 years old when he is released from incarceration, when the chance of future crimes is much lower.

Under 18 U.S.C. § 3553(a)(2)(D) this Court must also consider "the need for the sentence imposed—. . . to provide the defendant with needed educational or vocational training, medical care. . . in the most effective manner." The pandemic will impact the mental health services and programming that Mr. Wiggins will need in prison. The BOP notes that programing is only being offered "to the extent practicable" and that "[i]nstitutions with active COVID-19 cases may make exceptions to these programming requirements for the safety of inmates and staff." [9] Undoubtedly, because of the pandemic, the treatment an inmate needs will be limited.

18 U.S.C. § 3553(a)(6) requires sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The statutory penalty and the Sentencing Guidelines each point toward a sentence of 84 months. As a result, 84 months is the typical sentence that is imposed upon defendants convicted under 18 U.S.C. § 924(c)(1)(A)(ii). The Probation Office recommended a sentence of 84 months. This recommendation is consistent with the Rule 11(c)(1)(C) plea agreement.

---

[9] *See* Fed. Bureau of Prisons, *BOP Modified Operations* (Updated Nov. 25, 2020), https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed January 3, 2022).

18 U.S.C. § 3553(a)(7) requires sentencing courts to consider "the need to provide restitution to any victims of the offense." The money taken was recovered at the time of his arrest. Mr. Wiggins has agreed to pay restitution pursuant to the plea agreement.

## **Conclusion**

For the foregoing reasons, and for any other reasons set forth at the sentencing hearing, a sentence of 84 months is sufficient in this case to protect the public, afford just punishment, and provide for rehabilitation.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
UBONG E. AKPAN
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500